548

## In re Anonymous No. 90 D.B. 85

Disciplinary Board Docket No. 90 D.B. 85.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

KERNS, *Member,* September 30, 1992—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

### HISTORY OF PROCEEDINGS

Petitioner was disbarred by Supreme Court order dated December 5, 1985, following his consensual disbarment from the [A] bar for theft by failure to make required disposition of funds and forgery, docketed at no. [    ], Disciplinary Docket No. [    ].

On October 25, 1990, petitioner filed the instant petition for reinstatement docketed at No. 90 D.B. 85.

The matter was referred to Hearing Committee [   ], which was chaired by [   ], Esq., and included [   ], Esq. and [   ], Esq.

A hearing on the matter was held on June 17, 1991. On September 19, 1991, Hearing Committee [   ] filed its report, and recommended that the petition for reinstatement be granted.

The Office of Disciplinary Counsel did not file a brief on exceptions.

The matter was adjudicated at the December 12, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

We adopt the findings of fact contained within the hearing committee report.

(1) Respondent was born on September 21, 1952, and admitted to the Pennsylvania bar in November 1981. He is a graduate of [   ] School of Law, [   ], [A]. He was admitted to the [A] bar in December 1981.

(2) From the time of his admission to the bar of Pennsylvania and [A] until his [A] disbarment, petitioner was an associate with the firm of [B], [   ], [A]. He began working for attorney [B] in May 1980 as a law clerk and became associated with that firm shortly after his admission to the bar.

(3) During the period from February 1984 to September 1984, petitioner forged the signatures of payees listed on checks received by his firm on the settlement of insurance claims and used the funds for his own purposes. This action consisted of five checks and involved four clients of the [B] firm.

(4) During the same period, February to September 1984, petitioner obtained 13 checks from the checking account of his employer, forged signatures to these checks, and cashed them for his own use.

(5) Between September 15, 1984 and September 18, 1984, petitioner entered a safe located in the office of his employer and removed funds from it and converted those funds to his own use.

(6) As a result of his actions, petitioner pled guilty to one count of theft by failure to make required disposition of funds and two counts of forgery before the [A] Superior Court, [   ] County, on June 18, 1985.

(7) Petitioner's conduct violated several disciplinary rules in effect as of the time of his actions, as well as corresponding Rules of Professional Conduct now in force in the Commonwealth of Pennsylvania.

(8) Petitioner was addicted to cocaine during his period of misconduct, having first tried that drug within a few months prior to the beginning of his period of misconduct.

(9) As a result of the above-referenced guilty plea, he was sentenced to three years' probation on the condition that restitution be made in full to the victims of his actions. This probationary period was terminated on August 24, 1987, by order of the Superior Court of [A], [   ] County, which was approximately one year prior to the stated three-year probationary term.

(10) Petitioner has reimbursed all persons and institutions who suffered financial loss by reason of his misconduct, including clients of his former firm and his employer, [B], Esq.

(11) Petitioner's misconduct came to light on his own initiative when he disclosed his actions during a conference between himself, his wife, and his employer, [B], in October 1984.

(12) Contemporaneously with his admission of misconduct to his employer, petitioner entered a 30-day substance abuse detoxification program at [C] Hospital in suburban [    ], which treatment included psychiatric/psychological therapy.

(13) Upon his release from [C] Hospital, petitioner began regular attendance at meetings of Alcoholics Anonymous and Narcotics Anonymous, has continued active and regular participation in Alcoholics Anonymous since November 1984 to the present, and continued to receive out-patient psychological counselling from which he has been weaned to the point where he no longer undergoes such counselling.

(14) Petitioner does not drink alcohol or use narcotics and has not done so since October 1984.

(15) The funds taken by petitioner were used by him to support his drug addiction.

(16) Other than the complaints arising from the misconduct in which petitioner engaged between February and September 1984, he has not been the subject of any disciplinary complaint in any jurisdiction since the time of his commencement of law school to the time of his disbarment in [A] and Pennsylvania.

(17) Shortly after his completion of the 30-day detoxification program at [C] Hospital, petitioner worked for seven months as a long-term substitute teacher in the [    ] School District, [    ], Pennsylvania.

(18) In approximately June 1985, petitioner began employment with [D], Esq., performing various clerical and paralegal functions and assisting in clerical and paralegal functions relative to [E] Savings and Loan Association, of which attorney [D] was the chief executive officer. Petitioner progressed from this clerical position to executive vice president with [E] Savings and Loan As-

sociation from the inception of his employment to his voluntary termination of his position in order to take other employment. During this time, he became instrumental in the management of [E] Savings and Loan Association in all respects and became the second in command in the organization, junior only to [D], who was fully aware of petitioner's prior drug dependence and misconduct.

(19) In September 1989, petitioner left [E] Savings and Loan Association to take a position with [F] Financial Group, a financial consultant/mortgage broker firm headed by [G], Esq. Petitioner now holds the position of vice president.

(20) Petitioner's work with [F] consists of representing lenders and borrowers in attempting to place loans.

(21) The work performed by petitioner for [D], [E] Savings and Loan Association, and [F] did not and does not constitute the unauthorized practice of law and he has engaged in no other activities which could be construed as being the unauthorized practice of law.

(22) In the course of his employment with [D], Esq., [E] Savings and Loan Association and [F], petitioner engaged in legal research on a number of topics including but not limited to areas of import to lenders and borrowers, read legal periodicals including but not limited to [ ] and the [ ], [ ],

[ ], and [ ] county legal reporters, attended meetings of the [ ] Bar Association's committees on real estate law and title insurance law, attended numerous seminars presented by the Pennsylvania Bar Institute and Professional Education Systems Inc., and attended the Pennsylvania Bar Institute at [ ] University on [ ].

(23) [D], Esq., petitioner's former employer and chief executive officer of [E] Savings and Loan Association, testified that during petitioner's employment from 1985

to 1989 he found him to be of high integrity and a very industrious human being. [D] had no hesitancy in allowing petitioner to work with [E's] accounts and cash. [D] also testified as to petitioner's involvement with Alcoholics Anonymous, his assistance to newcomers in drug and alcohol programs at [C] Hospital, and his participation in the affairs of his synagogue.

(24) [G], Esq., chief executive officer of [F] Financial Group, petitioner's current employer, testified that when he first met petitioner, while petitioner was working for [E] Savings and Loan Association, he perceived him to have an inordinate amount of integrity. [G] testified that he offered petitioner a position with [F] Financial Group knowing of petitioner's misconduct which led to his disbarment in [A] and Pennsylvania, and, having worked with petitioner for the past two years, has found him to be extremely trustworthy and a person of the highest integrity.

(25) Petitioner has been active in the affairs of his synagogue and has risen to a position of responsibility in this organization.

(26) Petitioner has been active in campaigning, on a nonpartisan basis, for candidates he believes are best qualified to sit on the Board of Directors of his public school district.

## CONCLUSIONS OF LAW

(1) The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

(2) Petitioner has sustained his burden of proving he possesses the moral qualifications, competency, and learning in the law required of an attorney licensed to practice law in the Commonwealth of Pennsylvania.

(3) Petitioner's resumption of the practice of law will not compromise the integrity of the bar nor subvert the interests of the public.

## DISCUSSION

The issue in the instant proceeding is whether petitioner's prayer for reinstatement to the Pennsylvania bar should be granted. As in every reinstatement case, determination of this question requires a two-part analysis.

The first phase of analysis involves the timeliness of the petition for reinstatement. The preliminary point of inquiry is whether the conduct for which petitioner was disbarred was so egregious as to preclude reinstatement at this time. When contemplating a petitioner's possible readmission to the bar, "a review of the underlying offense is required as an initial step in determining eligibility for reinstatement." *Office of Disciplinary Counsel v. [H]*, 4 D.B. 76 at 4. *[H]* recognizes that there are certain acts of misconduct which are so offensive to the integrity of the bar and subversive to public interest that no passage of time or rehabilitation can cure the injustice which would occur if the petitioner was reinstated. The question in the instant matter is whether the series of actions which occurred in 1984 in [A] and led to petitioner's disbarment is so egregious as to preclude immediate restoration to the Pennsylvania bar. During the time in question, petitioner forged employer and client settlement checks and converted the funds in order to finance his drug and alcohol addiction. After seven months of this unprofessional behavior, petitioner confessed his misconduct to his employer, made full restitution to all parties, and entered a substance abuse rehabilitation program. Although we are cognizant of the serious nature of petitioner's misconduct, we believe that his aberrational actions were

not so outrageous as to prevent consideration of his immediate reinstatement to the Pennsylvania bar.

This conclusion is based upon the nature of petitioner's misconduct, his rehabilitation from the problems which led to his actions, and a survey of other Pennsylvania reinstatement cases. See *Office of Disciplinary Counsel v. [I]*, 26 D.B. 81 (attorney readmitted to the bar after delivering a bribe to a public official, giving false testimony under oath after a grant of immunity, failing to make appropriate disclosure to a federal grand jury and law enforcement officers, and "laundering" checks for a public official); *In re [J]*, 49 D.&C.3d 298 (1988) (petitioner reinstated after numerous convictions for offering materially untrue statements to the Office of Housing and Urban Development, fraudulent lot sales, and mail fraud); and *Office of Disciplinary Counsel v. [K]*, Nos. 4 and 35 D.B. 79 (attorney who voluntarily resigned from the bar after unsatisfactory handling of client affairs was later reinstated).

The next issue is whether a sufficient quantitative period of time has elapsed since petitioner's misconduct during which he has engaged in qualitative rehabilitation. *Office of Disciplinary Counsel v. Keller*, 509 Pa. 573, 506 A.2d 872 (1986); *Office of Disciplinary Counsel v. [K]*, Nos. 4 and 35 D.B. 79. In other words, we must decide if petitioner has been satisfactorily rehabilitated from the conduct which led to disbarment.

Since his 1984 misconduct, petitioner has engaged in a substantive program of rehabilitation. He successfully completed a drug and alcohol rehabilitation program, and has remained substance-free since 1984. The hearing committee heard ample testimony about petitioner's remarkable rehabilitation from numerous members of the bar. The committee also heard testimony from petitioner's post-disbarment employers, who gave glowing testimo-

nials about petitioner's integrity and work performance. This testimony, as well as the fact that petitioner has made full restitution to all parties, satisfactorily proves that petitioner has engaged in a qualitative program of rehabilitation during the period of his disbarment.

The second phase of analyzing petitioner's bid for reinstatement involves examination of his moral qualifications and learning in the law, as well as consideration of any possible detriment his readmission could cause the public or the bar. See Rule 203, Pa.R.D.E. Petitioner bears the burden of proving, with clear and convincing evidence, that he possesses the moral qualifications and learning in the law expected of a Pennsylvania attorney, and that his reinstatement will not be subversive to the interests of the public nor detrimental to the integrity of the bar. See Rule 218(c)(3)(i), Pa.R.D.E.

The aforementioned *[J]* and *[K]* cases stand for the proposition that a petitioner may sustain the burden of proving moral fitness through the presentation of favorable character testimony by highly regarded members of the bar. Petitioner presented extremely favorable character testimony by his two post-disbarment employers, [D], Esq., and [G], Esq., who attested to his high moral fiber and integrity. Both attorneys also testified that they had entrusted petitioner with large sums of money, and believed he should be restored to the bar. This glowing testimony, coupled with petitioner's extensive community volunteer work and successful rehabilitation from substance abuse, satisfactorily demonstrates that petitioner has the moral qualifications necessary to resume the practice of law.

Petitioner also sustained the burden of proving he has the learning in the law necessary to resume the practice of law. Petitioner has performed legal research during

the period of his disbarment, read numerous legal publications, and attended the Pennsylvania Bar Institute Legal Practice course.

In light of all of these favorable factors, we are satisfied that petitioner's reinstatement to the Pennsylvania bar will not prove detrimental to either the public or the bar. Petitioner has satisfied the burden of proving his fitness to practice law in Pennsylvania. The petition for reinstatement should therefore be granted.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that the petition for reinstatement of [petitioner] to practice law in the Commonwealth of Pennsylvania be granted.

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in investigating and processing said petition for reinstatement.

Ms. Flaherty and Mr. Leonard did not participate in the adjudication.

## ORDER

And now, September 30, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated March 9, 1992, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.

Mr. Justice Flaherty and Mr. Justice Papadakos dissent.